695 So.2d 1001 (1997)
George BLOUNT, Marian Chabaud, Emile and Josie Maurer and Marie Borrello
v.
SMITH BARNEY SHEARSON, INC. and Susan Ryan, Individually and as the Administratrix of the Succession of William Ryan.
No. 96-CA-0207.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
Order Granting Limited Rehearing March 14, 1997.
Writ Denied May 30, 1997.
*1002 Harry D. Hoskins, III, Hoskins & Hoskins, L.C. New Orleans, for Plaintiffs/Appellants, George Blount, Marian Chabaud, Emile and Josie Maurer and Marie Borrello.
Susan Northrop Ryan, Lemle & Kelleher, L.L.P., New Orleans, in pro per.
Stephen H. Kupperman, Robert E. Harrington, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, for Defendant/Appellee, Smith Barney, Inc.
Michael R. Allweiss, Judith A. Kaufman, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for Appellee, Susan Ryan, etc.
Before ARMSTRONG, JONES and MURRAY, JJ.
MURRAY, Judge.
Appellants George Blount, Marian Chabaud, Emile and Josie Maurer, and Marie Borrello, appeal the trial court's judgment maintaining Exceptions of Prematurity filed on behalf of Smith Barney, Inc., and Susan Ryan, as Administratrix of the Succession of William Ryan, and an Exception of Improper Cumulation filed on behalf of Susan Ryan, Individually. We affirm.

FACTS AND PROCEDURAL HISTORY:
Appellants filed suit against Smith Barney, Inc. (Smith Barney), and Susan Ryan, Individually (Ms. Ryan), and as the Administratrix of the Succession of William Ryan (the Succession), alleging a breach of fiduciary duty by William Ryan, Ms. Ryan's late husband who was a stockbroker for Smith Barney. Ms. Chabaud alleges that she invested $20,000 with Mr. Ryan with the understanding that she was on a fixed income, and that he should not make risky investments with her money. Emile and Josie Maurer and Marie Borrello allege that they each invested $5,000 with Mr. Ryan, giving instructions similar to those of Ms. Chabaud. George Blount claims to have invested $85,000 with Mr. Ryan. He alleges numerous acts of misconduct by Mr. Ryan in connection with his investment.
In response to the petition, Smith Barney filed dilatory exceptions of prematurity and improper cumulation of parties. The Succession filed dilatory exceptions of prematurity and improper cumulation of actions and parties. Ms. Ryan filed a peremptory exception of no cause or right of action,[1] dilatory exceptions of prematurity and improper cumulation of actions and parties. All defendants claimed that the suit was premature because the plaintiffs had signed binding arbitration agreements with Smith Barney. Additionally, the Succession and Ms. Ryan claimed that the suit was premature because the plaintiffs had not filed a claim with the succession representative as required by La.Code Civ. Proc. art. 3246. Lastly, all defendants asserted that plaintiffs' claims were improperly cumulated because no community of interest existed between them as all of their investments were made at different times, in different amounts and under different circumstances.
On November 2, 1995, the trial court rendered judgment maintaining the exceptions of prematurity filed on behalf of the Succession and Smith Barney.[2] The court also maintained Ms. Ryan's Exception of Improper Cumulation of Actions and Parties. No written reasons for judgment were requested and none were given.

DISCUSSION:
Article 926 of the Louisiana Code of Civil Procedure provides that the objection of prematurity may be raised through the dilatory exception. The function of this exception is to permit raising the issue that the judicial cause of action has not come into existence because some prerequisite condition has not been met. Steeg v. Lawyers *1003 Title Ins. Corp., 329 So.2d 719 (La.1976); Vizzini v. Ward, 94-290, p. 3 (La.App. 5th Cir.1994), 645 So.2d 735, 736. It usually is utilized in cases where the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. Vizzini, 94-290, p. 3, 645 So.2d at 736.
The exceptor has the initial burden of showing that an administrative remedy was available, thus making the judicial action premature. Id. In order to support an exception of prematurity based on the existence of an agreement to arbitrate, Smith Barney and the Succession must establish the existence of a valid and enforceable agreement. Several of the documents signed by each appellant for their particular accounts contained arbitration clauses which read:
The undersigned agrees that all controversies between the undersigned and Smith Barney and/or any of its ... employees present or former concerning or arising from (i) any account maintained with Smith Barney by the undersigned; (ii) any transactions involving Smith Barney and the undersigned, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, whether such controversy arose prior, on or subsequent to the date hereof, shall be determined by arbitration ...
The Louisiana Arbitration Law, La.Rev.Stat. 9:4201-4217, in pertinent part, provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Because the Louisiana Arbitration Law is virtually identical to the United States Arbitration Act, 9 U.S.C. § § 1-14 we look to federal law for its interpretation. Any inconsistency between the federal act and Louisiana law must be resolved in favor of the federal act as federal law preempts contrary state law. Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852, 860-61, 79 L.Ed.2d 1 (1984).
The United States Supreme Court has stated that "the Arbitration Act provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability" absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that would be grounds to revoke any contract. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).
Appellants cite various grounds upon which they contend that the arbitration clauses should be revoked. First, Mr. Maurer and Ms. Chabaud claim that the arbitration clause is unenforceable as to their joint account because Mr. Maurer's signature was forged on a margin agreement for the account. However, an arbitration clause is also contained in a joint account agreement signed by both Mr. Maurer and Ms. Chabaud for the same account. Mr. Maurer did not deny signing the joint account agreement. Thus, whether or not his signature on the margin agreement is valid is irrelevant. This argument is without merit.
Second, appellants contend that the relationship between them and Mr. Ryan was fiduciary in nature so that Mr. Ryan had a duty to disclose the jury waiver/arbitration language contained in the account documents. Mr. Blount claims that Mr. Ryan misled him about the nature of the documents so that his signature was obtained by fraud, thus vitiating his consent.
Neither the cases cited by appellants nor our own research reveals any basis for appellants' assertion that Mr. Ryan had a heightened duty as a stock broker so as to require him to read and explain the various documents to the appellants before they signed them. A person who signs a written instrument is presumed to know its contents *1004 and cannot claim that he did not read or understand the document. Brown v. Simoneaux, 593 So.2d 939 (La.App. 4th Cir.1992); Tweedel v. Brasseaux, 433 So.2d 133 (La. 1983). Only two of the appellants testified at the hearing on the exceptions. Mr. Blount testified that he signed each and every document that Mr. Ryan placed in front of him. He claimed that Mr. Ryan removed each document as he signed it, and handed him another. At no time did he read any of the documents placed before him. Mr. Maurer testified that he could not recall whether Mr. Ryan had explained to him that he was waiving his right to a jury for any claims against Smith Barney. Although he testified that he signed each and every account document, he did not state that he read any of the documents he signed. Thus, we find no merit to this argument.
Because appellants have not established any of the grounds that would vitiate their consent to the agreement to arbitrate, we find that the trial court properly maintained the exceptions of prematurity raised by Smith Barney and the Succession.
As an additional ground for its exception of prematurity, the Succession raised the appellants failure to comply with the provisions of Article 3246 of the Code of Civil Procedure, which provides that:
A creditor of a succession may not sue a succession representative to enforce a claim against the succession until the succession representative has rejected the claim.
If the claim is rejected in whole or in part by the succession representative, the creditor to the extent of the rejection may enforce his claims judicially.
Appellants counter that art. 3246 was complied with when George Blount made a claim seeking arbitration before the National Association of Securities Dealers (NASD). The record establishes that Mr. Blount submitted a claim for arbitration on November 16, 1993, listing William Ryan and Smith Barney as respondents. Mr. Ryan committed suicide on or about March 3, 1994, according to a letter from appellants' counsel to the NASD. In that letter counsel requested that a stay issue until a succession representative could be determined and substituted for Mr. Ryan. The letter was copied to "counsel for Smith Barney." Thus the record does not support appellants' contention that they made a claim against the Succession. To the contrary, the record establishes that the Succession did not exist at the time Mr. Blount submitted his claim for arbitration. Further, Mr. Blount withdrew his claim for arbitration before he notified the NASD of the identity of a succession representative. Because no claim has ever been made against the Succession, we find that the trial court was correct in maintaining the Succession's exception of prematurity on this ground.
The judgment from which appellants' appeal also maintained an exception of improper cumulation raised by Ms. Ryan. However, because we affirm the ruling on the exception of prematurity filed by the Succession, we need not address this exception. The claim against Ms. Ryan is derivative of the action against Smith Barney and the Succession, and therefore is also subject to arbitration.
For the reasons assigned above, the judgment of the trial court is affirmed.
AFFIRMED.

ON REHEARING
PER CURIAM.

LIMITED REHEARING GRANTED, ORIGINAL OPINION AMENDED
We grant limited rehearing to correct a factual error in our original opinion. In that opinion, this Court found that Emile Maurer had signed a joint account with Marian Chabaud, thereby making the fact that he challenged his signature on a margin account agreement irrelevant. After another review of the very confusing testimony and more confusing exhibit list, we admit that we were in error. A joint account agreement signed by both Emile Maurer and Marian Chabaud is not in the evidence before us. The joint account agreement to which this Court erroneously referred was a joint account of Emile Maurer, his wife, and his aunt-in-law.
*1005 However, we stand by our decision to affirm the trial court's ruling. The trial court was obviously not convinced by the evidence presented that Mr. Maurer's signature was forged. The transcript reveals that appellants offered a document into evidence which was a spliced document indicating two signatures of Mr. Maurer. This document, although properly tendered at trial, is not in the record. Mr. Maurer testified that one of the signatures on the spliced document was not his. No expert testimony was offered.
Based on the trial court's ruling, it can be inferred from the record that the trial judge did not find that Mr. Maurer's signature was forged. This is a factual finding by the trial court, which we will not upset on appeal absent manifest error. Maranto v. Goodyear Tire & Rubber Co., 94-2603, p. 7 (La. 02/20/95), 650 So.2d 757, 762. We do not find the trial judge's decision to be clearly wrong.
We, therefore, amend our original opinion to correct the factual finding, but maintain our original opinion in all other respects.
NOTES
[1] Ms. Ryan converted her exception of no cause or right of action to a motion for summary judgment, which was denied on August 31, 1995.
[2] The court noted that it would maintain the exception of improper cumulation if the arbitration agreement were found to be unenforceable.